**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

STEPHANIE EICHLER,

                Plaintiff,                                **Case Nos. 2:12-cv-332**
                                                            **JUDGE SMITH**
        -v-                                    **Magistrate Judge Deavers**

STEAK N' SHAKE OPERATIONS,
INC.*, et al.*,

                Defendants.

<u>**OPINION AND ORDER**</u>

       This employment discrimination action is before the Court on Defendant Steak N' Shake

Operations, Inc.'s Motion for Summary Judgment (Doc. 17).  This motion is briefed and ripe for

review.  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary

Judgment.

**I.**        **BACKGROUND**

       Plaintiff Stephanie Eichler was born February 26, 1941.  Defendant Steak N' Shake

Operations, Inc. ("Defendant" or "Steak N' Shake") is a restaurant chain.  In September 2009,

Steak N' Shake hired Plaintiff, who was 68 years old at the time, to work at its Polaris Parkway

restaurant in Columbus, Ohio (the "Polaris restaurant").  Steak N' Shake initially hired Plaintiff

as a Manager in Training.  In November 2009, Steak N' Shake promoted Plaintiff to the position

of Manager at the Polaris restaurant.

       During the nine years preceding Plaintiff's hiring at Steak N' Shake, she worked for three

different restaurants.  From 2000 until 2002, Plaintiff was an Assistant General Manager at an

Applebee's restaurant.  From 2002 until 2006, Plaintiff was the General Manager at a Cosi

restaurant.  And from 2006 until 2008, Plaintiff was an Assistant General Manager at an UNO Chicago Grill restaurant.

In April 2010, the Polaris restaurant's General Manager, Matt Fry, with Plaintiff's assistance, completed Plaintiff's "Individual Development Plan - Steak n Shake Operations." The Individual Development Plan outlined some of the leadership behaviors that Plaintiff had exhibited during her first 6 or 7 months of employment at Steak N' Shake, indicated Plaintiff's interest in advancing to higher level management positions, and set forth a plan for her growth and development as a management employee at Steak N' Shake.

In the Steak N' Shake restaurant management hierarchy, the Manager reports to the Restaurant Manager, who reports to the General Manager.  A District Manager supervises several Steak N' Shake restaurants and has direct supervision over General Managers and supervisory responsibility as to the remaining restaurant-level management team.  Since 2006, Ben Hunter has been the District Manager for Steak N' Shake's Columbus, Ohio district, which includes the Polaris restaurant where Plaintiff worked.

When Steak N' Shake hires external management candidates, it assigns to them one of two levels – Level One or Level Two.  Level One candidates meet the minimum hiring qualifications for the Manager position.  After completing initial management training, a Level One candidate is promoted to Manager.  A Level One candidate can be promoted to Restaurant Manager or General Manager if he or she demonstrates the requisite stills and qualifications required for those positions.  Steak N' Shake generally only promotes Restaurant Managers to General Managers, but if there is a lack of viable candidates and limited time, Steak N' Shake may promote a Manager directly to General Manager.

2

Level Two candidates meet the minimum hiring qualifications for the Manager position, and they possess additional relevant management experience and credentials. After a Level Two candidate completes initial training, he or she is generally promoted to Restaurant Manager. Restaurant Managers are expected to develop their skills and become General Managers within six months to one year of becoming Restaurant Managers. Promotion from Restaurant Manager to General Manager, however, is not guaranteed.

Plaintiff was a Level One hire. Hunter, who did not hire Plaintiff, testified that he would not have considered hiring Plaintiff as a Level Two candidate in 2009 because she only had four years of management experience in the previous ten years, and her most recent work experience was as an assistant general manager from 2006 to 2008.

Three male employees were promoted over Plaintiff during her tenure at Steak N' Shake: Joe Thurston, Johnny Dinh, and Richard Knodell. Each of these males was an outside hire and had a background in restaurant management. Steak N' Shake hired Thurston as a Level Two candidate in December 2009. Hunter promoted Thurston to the General Manager position at the Polaris restaurant in June 2010, after the departure of General Manager Matt Fry. Hunter promoted Thurston because, based on Hunter's personal observations of him, he demonstrated the requisite skills and qualifications necessary for the position of General Manager. For the position of General Manager, Steak N' Shake seeks individuals who delegate effectively, take ownership over their work, are leaders, are self-disciplined, and are goal setters. Hunter did not consider Plaintiff as a potential replacement for Fry because, based on his personal observations of her and her qualifications, she did not possess the requisite skills and qualifications required to be a General Manager. In Hunter's view, Plaintiff lacked leadership, self-discipline, and the

ability to delegate her duties.

Hunter hired Dinh as a Level Two candidate in Steak N' Shake's Columbus district in February 2010 based on his experience, which included serving as General Manager of the Buckeye Hall of Fame Café for the eight years immediately preceding his hiring.  After Dinh completed his training, he was promoted to Restaurant Manager at the Easton Town Center restaurant in Columbus, Ohio, in April 2010.  Hunter personally observed Dinh and determined that he possessed the requisite skill and qualifications necessary for promotion to General Manager.  Steak N' Shake promoted Dinh to General Manager of the Marion, Ohio restaurant in September 2010.

Hunter hired Knodell as a Level Two candidate in December 2010 because he was a General Manager and training leader for Pizza Hut for approximately 11 years, from 1997 to 2005 and from 2007 to 2010, and he was a District Manager of a McDonald's franchise with approximately five restaurants for two years from 2005 to 2007.  After Knodell completed management training, Steak N' Shake promoted him to Restaurant Manager in February 2011. Knodell remains a Restaurant Manager because, in Hunter's opinion, he has not demonstrated the skills and qualifications necessary to advance to General Manager.

In March 2011, Hunter determined that Plaintiff was misinforming new hires regarding the orientation process, causing them to arrive at the orientation misinformed and unprepared. Hunter directed Thurston to issue corrective action concerning Plaintiff, and a corrective action form was completed in March 2011, indicating that she was not following company procedure and that written counseling was the action taken regarding the problem.

In late March or early April 2011, Hunter received reports that Plaintiff was spending too

4

much time in her restaurant's office instead of helping associates as necessary, and that she was having problems effectively communicating with associates.  Hunter validated these reports during routine visits to the Polaris restaurant.  Hunter orally counseled Plaintiff regarding these issues on a number of occasions.

In April or early May 2011, Hunter received reports from Thurston and associates at the Polaris restaurant that Plaintiff was improperly changing the associates' schedules after they were posted.  These schedule changes negatively affected the Polaris restaurant's operations. Hunter again directed Thurston to issue corrective action to Plaintiff in view of the scheduling-related issues.  Thurston consequently completed a corrective action form and counseled Plaintiff regarding these issues.

In May 2011, Hunter personally evaluated Plaintiff's implementation of Steak N' Shake's new breakfast menu.  Hunter used a checklist to evaluate Plaintiff's performance. Plaintiff scored poorly on the checklist.  The Polaris restaurant performed "substantially worse" than the other restaurants in the Columbus district as it related to the new breakfast program. (Hunter Dep. at 42).  Hunter met with Plaintiff to discuss the deficiencies of her work and he provided a final warning to her in May 2011.

After the issuance of this final warning, Hunter personally observed Plaintiff's performance on at least one occasion, and he received reports from associates at the Polaris restaurant indicating that Plaintiff continued to have performance deficiencies.  Because Plaintiff did not correct the previously identified performance deficiencies, Hunter made the decision to terminate Plaintiff's employment with Steak N' Shake on May 25, 2011.  Plaintiff was replaced by Amanda Springston, born August 26, 1990.

During Plaintiff's employment at Steak N' Shake, she complained to Thurston and his superiors because she believed that she was unfairly having to perform his duties.  Also during her employment, Plaintiff was diagnosed with an aortic aneurism, which required her to undergo a surgical procedure in March 2011.  Plaintiff informed Thurston and Hunter that her condition may require future surgery and time off for recuperation.  Despite the diagnosis, Plaintiff admits that she is not legally disabled.  Plaintiff had no focus or concentration issues, was not limited in her ability to care for herself, to freely move about, or to engage in physical activities.  In sum, she had no limitations on her ability to work.  Additionally, Plaintiff testified that no one at Steak N' Shake considered her disabled.

Lastly, during Plaintiff's employment at Steak N' Shake, comments were made about her age.  Plaintiff's supervisors also allegedly commented about Plaintiff's health status.  Plaintiff testified that, when she returned to work following her surgical procedure, Hunter commented that he was "glad to hear [Plaintiff] was still kicking," and Thurston said that he was "glad to see [Plaintiff] up and around."  (Eichler Dep. at 73-74).  Plaintiff viewed these comments as encouragement and not evidence of discrimination on the basis of her age or medical condition. Plaintiff also testified that Thurston said to her, "if you weren't so old and I wasn't married, I'd hit on you." (Eichler Dep. at 43-46, 97).  Nathan Mann, an associate at the Polaris restaurant, testified that joking about Plaintiff's age was a regular occurrence among Steak N' Shake employees at the Polaris restaurant.  Thurston was one of the employees who joked about Plaintiff's age.  Plaintiff has acknowledged, however, that she was a willing participant in the joking about her age, including at least once saying she was "having a senior moment."  (Eichler Dep. at 43).  At some point in time, Plaintiff informed Thurston that she wanted the joking about

6

her age to stop. Plaintiff testified that any age-related comments did not impact her ability to do her job.

In March 2012, Plaintiff Stephanie Eichler initiated this action in the Court of Common Pleas, Franklin County, Ohio, against Defendants Steak N' Shake, ABC Corporations #1-5, and John/Jane Does #1-5.[1] Plaintiff's Complaint alleges that she was subjected to a hostile environment because of comments regarding her age during her employment with Steak N' Shake, and that Steak N' Shake discriminated against her on the basis of her disability, gender, and age, in violation of Ohio law, in connection with its alleged failure to accommodate her disability and its decision to terminate her employment in May 2011. In April 2012, Steak N' Shake removed this action to this Court. In January 2013, Steak N' Shake filed its Motion for Summary Judgment, which is now ripe for disposition.

## II.    STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

---

[1] None of the fictitiously named Defendants, ABC Corporations #1-5, and John/Jane Does #1-5, have been identified or served.

trial.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  *Lashlee v. Sumner*,  570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Liberty Lobby*, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the

8

material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street*, 886 F.2d at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    DISCUSSION

Plaintiff alleges that Steak N' Shake discriminated against her on the basis of her age and her disability when it terminated her employment on May 25, 2011.  Plaintiff also alleges that Steak N' Shake discriminated against her on the basis of her gender when it promoted several male employees instead of her.[2]  The Court will first address Plaintiff's age and disability discrimination claims, and then it will address her failure to promote claim.

### A.      Age and Disability Discrimination Claims

Ohio law provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer, because of the . . . age [or] disability . . . of any person . . . to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or

---

[2] While Plaintiff alleged in her Complaint that she was subject to a hostile work environment and that Defendant failed to accommodate her disability, she did not address Defendant's Motion for Summary Judgment as it relates to these claims.  Thus, she has abandoned these claims.  *See, e.g.*, *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in response to a motion for summary judgment).

privileges of employment, or any matter directly or indirectly related to employment."  Ohio

Rev. Code § 4112.02.  Courts generally apply federal precedent to age discrimination claims

under Ohio law.  *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).  And courts applying

Ohio disability discrimination law generally apply the same analysis as federal courts applying

the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*  *Jakubowski v. Christ Hosp., Inc.*,

627 F.3d 195, 201 (6th Cir. 2010).  An employment-discrimination case may be based upon

direct or circumstantial evidence.  *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).

### 1.    Direct Evidence

Plaintiff asserts that she has offered direct evidence of age discrimination.  She does not

assert the existence of direct evidence of disability discrimination.  Direct evidence is "evidence

that proves the existence of a fact without requiring any inferences."  *Rowan v. Lockheed Martin*

*Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).  Thus, direct evidence of discrimination is

proof that, if believed, compels "the conclusion that unlawful discrimination was at least a

motivating factor in the employer's actions."  *Jacklyn v. Schering–Plough Healthcare Prods.*

*Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  To prove age discrimination, a plaintiff must

show that age was the "but-for" cause of the employer's adverse action.  *Gross v. FBL Financial*

*Services, Inc.*, 557 U.S. 167 (2009).  Thus, there must be a causal link between the

discriminatory statement or conduct and the adverse action.  *See, e.g.*, *Chitwood v. Dunbar*

*Armored, Inc.*, 267 F. Supp.2d 751, 754 (S.D. Ohio 2003) (Spiegel, J.) ("Direct evidence of

discrimination occurs when either the decision-maker or an employee who influenced the

decision-maker made discriminatory comments related to the employment action in question.").

Ultimately, direct evidence of discrimination is "evidence from the lips of the defendant

proclaiming his or her . . . animus." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

In support of her assertion that there is direct evidence of age discrimination, she cites to her deposition testimony in which she generally discussed the "joking" that occurred at work regarding her age, and her testimony that Thurston said to her, "if you weren't so old and I wasn't married, I'd hit on you. (Eichler Dep. at 43-46, 97). Plaintiff also cites Nathan Mann's testimony that it was common for employees to joke about Plaintiff's age, that Thurston would engage in the joking banter, and that he witnessed Thurston circle his finger around the side of his head in reference to Plaintiff. Finally, Plaintiff cites to an unsworn written statement of Mann, in which he states that Thurston explained that work was not done properly because of Plaintiff's "old age," and that Thurston told him that Plaintiff was "losing her mind." (Doc. 21, Ex. 7-C).

Contrary to Plaintiff's assertion, she fails to cite any direct evidence of age discrimination. First, any reliance on Mann's unsworn written statement is unavailing because "[a] court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). Second, Mann's testimony is not direct evidence of age discrimination. Mann clarified at his deposition that Thurston did not make specific negative comments about Plaintiff's age or state that she was "losing her mind." (Mann Dep. at 17-18). While Mann did testify that Thurston made the above-described hand gesture, which Mann took to imply that Plaintiff was "losing it" or "crazy," this evidence of Thurston's hand gesture is not direct evidence of age discrimination because the meaning of the hand gesture is implicit and does not compel a finding that it was a reference to her age. Finally, Plaintiff's own testimony regarding statements made concerning

11

her age do not constitute direct evidence of age discrimination because they do not compel the

conclusion that unlawful discrimination on the basis of her age was the "but-for cause" of any

adverse employment action taken against her, including her termination.  Thus, Plaintiff has not

presented direct evidence of age discrimination.

### 2.      Indirect Evidence

Absent direct evidence of discrimination, Plaintiff's claims of wrongful discharge based

on age and disability must be evaluated under the three-part *McDonnell Douglas* burden-shifting

framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973); *see also*,

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.1 (6th Cir. 2010) (holding

that age discrimination claims based on circumstantial evidence are analyzed under *McDonnell

Douglas*); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008)

(applying the *McDonnell Douglas* burden-shifting framework to disability discrimination claim).

Under the *McDonnell Douglas* test, if the plaintiff establishes a *prima facie* case, then the

burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for

the adverse action against the plaintiff.  *See id.*; *Texas Dept. of Comm. Affairs v. Burdine*, 450

U.S. 248, 252-53 (1981).  If the defendant comes forward with a legitimate, non-discriminatory

reason for its actions, then the burden returns to the plaintiff to prove that the defendant's

proffered reason is a mere pretext for discrimination.  *See id.*; *Burdine*, 450 U.S. at 253.  To

show pretext, a plaintiff must show that the employer's proffered reasons:  (1) lack a basis in

fact; (2) did not actually motivate the employer's adverse action; or (3) are insufficient to

motivate the employer's adverse action.  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d

1078, 1084 (6th Cir. 1994).

"The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253. This burden-shifting framework is intended to be flexible in differing factual circumstances. *See, e.g.*, *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 869–70 (6th Cir. 2001), citing *Burdine*, 450 U.S. at 254 n.6.

### 3. Analysis

For the purpose of its Motion for Summary Judgment, Defendant does not challenge Plaintiff's ability to establish a *prima facie* case of age discrimination, in view of evidence that Plaintiff was a member of a protected class, she suffered an adverse employment action, she was qualified for the position held, and she was replaced by someone outside of the protected class. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11 (6th Cir. 2008) (setting forth elements to show *prima facie* case of age discrimination).

Defendant does challenge, however, whether Plaintiff can establish a *prima facie* case of disability discrimination. To establish a *prima facie* case of disability discrimination under Ohio law, a plaintiff must demonstrate that (1) the plaintiff had a disability, (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability, and (3) the plaintiff, while having a disability, could safely and substantially perform the essential functions of the job in question. *Wallace v. Mantych Metalworking*, 937 N.E.2d 177, 183 (Ohio Ct. App. 2010). For the purpose of a disability discrimination claim under Ohio law, "[d]isability" is defined as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking,

13

seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."  Ohio Rev. Code § 4112.01(A)(13).

Plaintiff was diagnosed with an aortic aneurism during her employment with Steak N' Shake.  This condition required Plaintiff to undergo a relatively minor surgical procedure in March or April 2011.  Plaintiff does not allege that the aortic aneurism condition caused a physical or mental impairment that substantially limits one or more major life activities. Plaintiff argues that Steak N' Shake "regarded [her] as disabled" and discriminated against her on the basis of her medical condition, despite testifying that she did not believe that anyone at Steak N' Shake considered her to be disabled.  (Eichler Dep. at 67; Doc. 21).  Plaintiff also testified, however, that she informed Thurston and Hunter that her condition may require her to undergo a major surgery sometime in the future, which would require months of recuperation. Plaintiff reasons that, after she so informed Thurston and Hunter, she began to be disciplined for performance deficiencies and then was terminated shortly thereafter.  In essence, Plaintiff asserts that the temporal proximity between when she informed her superiors of her condition and when she was terminated, indicates disability discrimination.  Considering the sequence and timing of events, the Court finds that Plaintiff has established a *prima facie* case of disability discrimination.  *See Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001) (recognizing that temporal proximity may be sufficient to establish *prima facie* case of discrimination).

However, even though Plaintiff can establish *prima facie* cases of age and disability discrimination, Defendant had the following legitimate, non-discriminatory reason for

14

terminating Plaintiff's employment:  Plaintiff failed to bring her work performance to the standard expected and required for a Steak N' Shake manager.  In an apparent attempt to demonstrate pretext, Plaintiff asserts that, not only was she replaced by a significantly younger employee, but multiple age-related comments were made about her by her direct supervisor, Thurston.  In support, Plaintiff cites the evidence pertaining to Thurston's comments regarding her age, as well as his gesture of waving a finger around the side of his head in reference to her. Plaintiff also argues that the temporal proximity between when she informed her superiors of her medical condition and when she was terminated indicates that Defendant's assertion that it terminated her employment for a legitimate, non-discriminatory reason was in fact pretextual.

Plaintiff cannot establish pretext.  Hunter, not Thurston, made the decision to terminate Plaintiff's employment based on his personal observations of her performance and his investigation and validation of reports from her restaurant.  Plaintiff suggests that Thurston may have orchestrated her termination to save himself by blaming her for problems at the Polaris restaurant.  But this suggestion falls flat as it relates to her claim of age discrimination (and other alleged bases for discrimination), because she specifically testified that Thurston's alleged effort to get her terminated had nothing to do with her age, gender, or medical condition.

The Court also finds as unavailing Plaintiff's contention that the temporal proximity between when she informed her superiors of her medical condition, and her corresponding potential need for time off for recuperation, and the corrective action taken against her, which ultimately led to her termination.  Even though evidence regarding the temporal proximity of events may establish a *prima facie* case of discrimination, temporal proximity alone is insufficient to demonstrate pretext.  *See, e.g.*, *Joostberns v. United Parcel Services, Inc.*, 166 F.

15

App'x 783, 798 (6th Cir. 2006) (stating that "temporal proximity alone cannot create a genuine issue of material fact as to whether defendant's proffered reason for termination was pretext, and that the actual motivation was disability discrimination").

Because Plaintiff cannot show pretext as it relates to Defendant's legitimate, non-discriminatory reason for terminating her employment, her age and disability discrimination claims fail as a matter of law.

### B.     Gender Discrimination Failure to Promote Claim

Plaintiff alleges that Steak N' Shake exhibited a bias toward woman, including her, as it relates to the promotion of employees to higher managerial positions.  Plaintiff relies on indirect evidence in support of this claim, and thus her gender discrimination failure to promote claim is analyzed under the *McDonnell Douglas* burden shifting framework.  *See Hicks v. SSP America, Inc.*, 490 F. App'x 781 (6th Cir. 2012).  To establish a *prima facie* case of discrimination based on a failure to promote, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).

Even assuming Plaintiff can present a *prima facie* case of gender discrimination based on a failure to promote, Defendant has presented a legitimate, non-discriminatory reason for not promoting her, which she cannot show was pretextual.  Evidence indicates that Hunter chose to promote Thurston, Dinh, and Knodell in the managerial hierarchy based on his evaluation that they were better qualified for the positions than Plaintiff and his personal observations of these

employees.  Plaintiff argues that the reason provided by Defendant explaining why she was not promoted was pretextual.  First, Plaintiff argues that Defendant's explanation is pretextual to conceal a hiring bias in favor of males, citing Steak N' Shake's hiring and promotion data from August 2009 through October 2012 for the Columbus district.  Second, Plaintiff argues that Defendant's explanation for why she was not promoted is pretextual because she is "just as qualified, if not more qualified, than the three candidates who assumed managerial positions above [her]."  (Doc. 21 at 12).

From August 2009 though 2012, Steak N' Shake hired or promoted 62 individuals to the Manager, Restaurant Manager, or General Manager position in the Columbus district.  Of those 62, 43 were men and 19 were women.  Of the individuals hired or promoted to the Restaurant Manager or General Manager positions, 22 were men and 4 were women.  From the time Plaintiff was hired in September 2009, until her termination in May 2011, Defendant hired 9 males and zero females for management positions in the Columbus district.  Some of these individuals were hired as Managers and the rest were hired and then promoted to Restaurant Manager or General Manager positions.  Based on this raw data, Plaintiff asserts that there was a clear prejudice towards hiring male candidates.

Plaintiff reliance on raw data is unavailing.  Statistical disparity may provide evidence of disparate treatment, if it is sufficiently probative.  *Equal Employment Opportunity Comm'n v. Ball*, 661 F.2d 531, 537 (6th Cir. 1981).  In order for statistical evidence to show discriminatory bias in hiring, it "must encompass the relevant labor market."  *Kinnard v. Rutherford Cty. Bd. of Educ.*, 109 F. App'x 85, 90 (6th Cir. 2004).  Thus, any statistical disparity between the number of male versus females hires or promotions, must, at a minimum, be related to the qualified

applicant pool, if any inference may be drawn from the disparity.  *See Kuhn v. Island Creek Coal Co.*, 974 F.2d 1338 (6th Cir. 1992) (unpublished decision) ("In the absence of admissible statistical evidence relating to the qualified applicant pool, we cannot draw valid inferences as to the reason for any statistical disparity between male and female employees in these at-issue jobs.").  Here, Plaintiff simply cites data showing a numerical disparity between men and women as it relates to Defendant's hiring and promotion of managers in the Columbus district.  Without more, the data does not constitute probative evidence of unlawful disparate treatment.  Because no inference of gender bias may be drawn from Plaintiff's data offering, Plaintiff's cited data does not create a genuine issue of material fact as it relates to her gender discrimination claim.

Plaintiff argues that she was just as, if not more, qualified for a promotion as the three comparators, and therefore Defendant's explanation for why she was not promoted is pretextual. This argument is unpersuasive.  Hunter testified that Thurston, Dinh, and Knodell were promoted based on their experience and his personal observations of their performance and skills.  Like these three comparators, Plaintiff had years of restaurant management experience prior to her hiring at Steak N' Shake.  But there is no evidence that her performance and skills were on par with the comparators who were promoted to higher management positions.  Plaintiff suggests that the Individual Development Plan document indicates that she was just as qualified for promotion as those who were promoted.  While the Individual Development Plan indicated that Plaintiff was exhibiting at least some leadership strengths valued by Steak N' Shake when the document was completed in April 2010, the document was primarily, as its title indicates, a plan for Plaintiff's professional growth and development within the company, including Plaintiff's interest in "possible advancement to GM."  (Doc. 21-2).  The document was not an

18

endorsement of Plaintiff's ability or qualification to advance in restaurant management at Steak N' Shake.  Moreover, insofar as Plaintiff argues that she was more qualified than the others, the Court notes that her own subjective belief that she was more qualified than them does not demonstrate pretext.  *See, e.g.*, *Hendrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004) (noting that a plaintiff's subjective view of her qualifications, without more, fails to establish pretext).

To show pretext as it relates to her failure to promote claim, Plaintiff would need to present evidence demonstrating that her qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former."  *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006).  Plaintiff argues that any differences between her and the comparators should be submitted to a jury to resolve, presumably to determine who was a better candidate.  But this argument misses the mark.  For the purpose of showing pretext, Plaintiff must show that it was unreasonable for Defendant not to promote her.  Thus, her contention that she has similar qualifications does not create a genuine issue of material fact as it relates to her gender discrimination claim.  Because Plaintiff cannot show pretext, her gender discrimination claim fails as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 17).  Furthermore, because all of Plaintiff's claims against Defendant Steak N' Shake fail as a matter of law, the claims against the fictitiously named Defendants would also fail for the same reasons expressed herein, even if they had been identified and served.

19

Accordingly, all of Plaintiff's claims are **DISMISSED**.

The Clerk shall remove Document 17 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 *s/ George C. Smith* 
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**